The next matter, number 152321, Olga Aracely Molina-Diaz v. Loretta Lynch, Attorney General. Good morning, Your Honors. My name is Nancy Kelley and I represent the petitioner in this case. I'm going to ask to reserve two minutes for the panel. Yes. This case involves a woman who was active for several years in a family-free movement called MUCA in Honduras, the Unified Movement of Presence of Unwanted Women. She comes from a family that was active for many, many years. The independent evidence on the record shows that she was a member of the governing board of that organization, that she was involved in incidents that took place over late June and July of 2001 after the president of Honduras, Manzalaya, had been deposed in an effort to support him in his attempts to re-enlighten the country. She submitted independent evidence of her involvement in that organization. She submitted a photo of herself taken during that time with the president when she and a small group of people crossed into Nicaragua and met with him, and she presented detailed evidence of an expert witness which addressed that organization and the incidents in question and the targeting of members of that organization both during the time of the coup and after the coup. She also submitted substantial country conditions documentation which supported all of the allegations that she made. The board made four primary errors. The first involved its finding that the petition was not credible. The second involved its failure to require that the immigration judge have provided notice to her of specific evidence that the immigration judge was requiring of her and an opportunity to either present that evidence or to explain why she could not reasonably produce the evidence. The third was its failure to grant a motion to reopen and reconsider when after the hearing she did in fact produce the evidence that the immigration judge had requested or had indicated would have resolved all of her concerns. And the fourth was its failure to consider in any way her application for relief under the Convention Against Torture. I'd like to address the credibility issue first. The board made essentially two errors with regard to credibility. The first is that it assumed that the immigration judge had found her not credible. The second is that the immigration judge did not make a negative credibility finding and the law requires that the judge explicitly find the individual not credible or there is a presumption of credibility. The board should apply the presumption of credibility and that presumption can only be overcome by the finding of clear error on the part of the judge. Could you address how you think we should interpret precisely the word explicitly? This argument hinges, as I understand it, on the rule that there must be an explicit adverse and so how would you have us construe that term explicit? I would not say that there needs to be absolutely specific words used but it needs to be absolutely clear from the record that the immigration judge has found the individual not credible. Here the judge said she had serious doubts about her credibility. She reviewed numerous points in the record that she found to be inconsistent, many of which we believe are not on the record. But she stopped short of finding her not credible. What she did was she then moved into a question of evidence and she seemed to be in trouble. She mentioned it at the end of her decision but she said that she was finding that she had not met her burden of proof. So she clearly stopped short of making a negative credibility finding. If we take that approach, that we review the whole record and then figure out whether the points to which your client testified, if all those points had been believed, wouldn't it have followed that your client would have prevailed? Yes, Your Honor. So doesn't that necessarily then mean that the immigration judge could not have believed everything your client said? Your Honor, there's two issues here with regard to credibility. The first is the failure to presumption for the moment. And somewhere to my surprise you've told us that there doesn't have to be any particular words. We can look at the whole record and if we do that here don't you have a problem? Well, Your Honor, the law allows for a finding of credibility but a finding nonetheless that the individual has not met their burden. And that is where the law requires that the immigration judge provide notice of the specific evidence that the judge requires and an opportunity to either present that evidence or to explain why that evidence is not reasonably showable. That's possible because you can have a scenario where the person testifies as to facts A, B, and C. You find them credible but A, B, and C aren't enough to withhold removal. Yes, Your Honor. Okay. But if a person testifies to A, B, and C and A, B, and C are plainly sufficient to achieve the result that the petitioner wants and it's nevertheless denied when the IJ says they have serious doubts about the credibility and it's not corroborated, why wouldn't we at that point conclude that it seems inexorable that the IJ did not believe the testimony? Your Honor, there are circumstances in which the judge could say, I believe what you're fact or a particular incident. It is our position here that even if the judge, if the board correctly found that the immigration judge found her not credible, that finding is not supported by the evidence on the record as a whole. Neither the board nor the immigration judge looked at the independent evidence that was there. And there was a specific detailed and lengthy affidavit from the secretary of MUCA, the organization that she worked with, detailing her activities in that organization, her involvement in the incidents in June and July. There was a photograph of her taken with the deposed president during that period. There was substantial country conditions documentation of all of the incidents that she testified to and there was an expert witness who produced an affidavit and detailed testimony concerning this specific organization that she worked with and the danger that was faced by the people in that organization. The expert was not allowed to testify specifically about events that took place between the first and second hearing and during that time the person who provided the affidavit to Ms. Melina Diaz was in fact detained by the government and tortured. And that's a fact of, he's a well-known individual so that is independently verified. With regard to the statutory obligation to provide complete notice and opportunity to present evidence, the section 208B1B2 of the Immigration Act specifically provides that when a trial effect determines that the applicant should provide evidence that corroborates otherwise credible testimony, such evidence must be provided unless the applicant does not have the evidence and cannot reasonably obtain the evidence. You have argued that that includes a requirement that the judge identify the specific evidence that's necessary. Why do you lose if we find that notice is required but notice of specific evidence is not required? Why is that a problem for you? Your Honor, in this case substantial evidence was provided. As I said there was evidence concerning her involvement in the organization. There was evidence concerning, she testified concerning the fact that she had been raped by a military officer. She was not able to present direct and the date of that child's birth coincides with the rape. In addition she produced the, well she didn't produce but part of the record was the credible fear screening during the time that she was detained by immigration and those records indicate that at that time she was, I believe it was five months pregnant and that coincides with the date of the rape. But it seems to me that based on that you win even if we don't hold that the notice requirement is notice of the specific evidence that the IJ is requiring. Your Honor, there are several levels to this case. One is that there was an incorrect determination regarding credibility both because there was no presumption made but also because key evidence was not considered and that that rendered the decision faulty because it wasn't based on the evidence on the record as a whole. The judge asked for specific documentation. The petitioner provided documentation going to each of the elements of the case that she could present. The judge however asked for other documentation that was very specific. The petitioner could not know what specific evidence was required. There is an obligation to produce evidence and she did that but she couldn't know for example that the judge would not be satisfied with the birth certificate and the records from immigration concerning the date of the conception of her child. So then why isn't it enough for us to hold that at that point the judge should be saying you haven't given me enough, you need to give me more or explain why you can't give me more. What I'm having trouble appreciating is your argument that the judge then has to identify specifically what that evidence is. It seems to me you can win without that. You can win this appeal without us knowing that. Yes, you're right. That is our position that we would win without it but in this case the judge also did require specific evidence and in such a case the statute requires that she be given an opportunity to present that. Here is our position that she did present sufficient evidence independent of the judge's determination that she met all the elements of her case. That evidence that was presented was not considered and then that renders the judge's decision faulty. In a very large number of the cases where there are unsuccessful petitions for withholding, removal or the like, particularly in the weaker cases, it's often going to be true that there are no corroborating documents or there aren't as many as the IJ would like to see. Correct. If we adopt your rule then isn't it going to be that essentially all those proceedings the IJ is going to have to not just rely on that but announce it and then adjourn to give an opportunity and so we've literally doubled the number of proceedings that have to be held. That's not necessarily the case, Your Honor. First of all, the plain language of the statute which is present and future oriented, it's clear from the plain language of the statute that there does need to be given an opportunity to present if you're going to require specific evidence and that's what happened in this case. It is not necessary that you have a second hearing. You could have, for example, the regulations here provide for pretrial conferences where these matters could be discussed, the judge could review the record because documents are usually submitted beforehand, the judge could review the record and then in a pretrial conference I would like to see these particular things that would give me the opportunity in the full hearing to either present them or explain why you couldn't. Is it always the same judge who does both of those proceedings? Usually, yes. Occasionally things are switched, but usually. May it please the Court, Mr. Rattenstrand, on behalf of the government. Your Honor, substantial evidence supported the agency's adverse credibility determination. The immigration judge outlined over the course of eight pages the constantly changing story that the petitioner gave in this case. It began in the August 2006 sworn statement that she gave to immigration authorities when she first illegally entered where she said she was coming to the United States to find work in North Carolina. She said she had no concern about being returned to Honduras. She said she would not be harmed there. But this is all not the point, right? Certainly there's evidence which could have supported a finding. The question is was the board required to adopt a presumption of credibility in the absence of an explicit finding, which therefore means the question was did the IJ explicitly make an adverse credibility finding? The IJ did, absolutely. Has the board promulgated any definition of what explicitly means in this context? Not that I'm aware of, but this Court has specifically discussed it, Your Honor. In the case Sum, which we identified in our 28J letter, this Court has said that an adverse credibility ruling, quote, does not require the recitation of unique or particular words. What is required is that it be clear from the record that the immigration judge disbelieved the testimony. And as Your Honor's questions suggested, here that the IJ disbelieved this testimony follows an extra belief from the denial of relief. Not only that. That's a little tricky, though, because what it does is we have to then go and look at all the testimony. We have to then form an opinion of whether that testimony, if believed, would compel the relief saw, which requires a legal judgment being made on our part, also requires some potential weighting of judgmental decisions, and only then would we be able to determine there was an adverse credibility finding. It seems to me when the agency put it in place that it be explicit, it was kind of intended to avoid us and the agency from having to do all that. You just look. Is there a plain adverse, which that's what I understand explicit to mean. Someone came at it out and said, I didn't believe the person. It doesn't have to be magic words. There are 50 different ways to say that, but there are 50 different ways to say it that doesn't require a holistic analysis of the whole record. I agree with that, Your Honor. And here a holistic analysis is not required. Here the IJ started off by saying I have serious doubts about this person's credibility based on a host of specifically identified inconsistencies in every iteration of her story and then concluded with the following. Although some evidence has been submitted to corroborate the claims, it has not been sufficient to satisfy the court about the credibility of the respondent's testimony. What could be clearer, that the IJ disbelieves the respondent's testimony. You don't have to engage in any sort of metaphysical manipulation of the record. In addition, it's not that in Lee, a case that we also cited in our 28J letter, this court did exactly this kind of analysis. It said that the record, quote, may be read to reflect an adverse credibility finding based on the IJ having explicitly noted that certain evidence undercut the petition's testimony. Wherever the line is, we are way on the other side of it. We have the IJ specifically identifying doubts and saying those are not resolved. Can you help me with this? When she reentered the country on November 2009, she was interviewed by an immigration officer who found that she had a reasonable fear of persecution or harm if she returned to Honduras. Is that something that was considered by the IJ? Is it entitled to anything in this case? No, Your Honor. That's a preliminary determination of whether the case should be moved on to a full, for an IJ to consider. It's more than just that. It's a finding of credibility of some nature. It's a different standard. It's asking if there is a reasonable possibility, which, of course, is not the standard in front of the IJ. It's a gate-checking determination as to whether this should be looked at further. But if I could focus again on that specific interview, there again was an important instance of a flat inconsistency between the testimony at the hearing and her sworn statement. When she came in on that occasion, what she testified to was that she feared the specific threats that had been made by Facuse and she feared that one of her MUCA members had been shot in the ear. At the same time, she testified that she had never been tortured by anyone for any reason and she testified that she had never been threatened or harmed by the Honduran government. Never. Then, two affidavits later, not the first affidavit but only in the second one, she then claims that she was raped. Those are flatly inconsistent statements that the IJ was perfectly appropriate to rely on as a basis, one of many bases, for the adverse credibility determination. Before we get into the rape situation, you say it has nothing to do with credibility? I'm sorry, what has nothing to do with credibility? The statement by the referral by the immigration official that it should proceed to further investigate. What was he referring to when he said that she had a reasonable fear of persecution or harm if she returned to Honduras? What persecution or harm was he referring to? He was referring to the only claim that she had made at that point, which was that Facuse had personally threatened her on three occasions. So what he's looking at is the information that's provided to him at the time and what the IJ is looking at, so I don't disagree that he took what she told him and said, this is enough for it to move forward. I don't disagree with that at all. What is important at the IJ proceeding is what's presented to the IJ, and at the IJ the story is ten times greater. It's different in terms of who's doing the threatening, not Facuse but his allies. There's all of a sudden all this domestic violence that had supposedly occurred. There's all of a sudden, not in the first affidavit but only in the second, a rape that occurred. So the immigration officer who made this preliminary assessment is only going on what she told him, and what she told him then was very, very different than what she testified to at the immigration hearing. And the IJ was fully justified in finding numerous inconsistencies as undermining her credibility. All right. Did the petitioner apparently try to present additional evidence which was denied? Only after the hearing was over. All of the, if we're moving into the motion to reopen, a motion to reopen was submitted to the board after the hearing in which the petitioner- And all of this went towards issues of credibility, did it not? It purported to go toward issues of credibility, but- How can you challenge credibility issues except by evidence that comes up afterwards? The LAC has made clear, Your Honor, that it is the- What's LAC? The matter of LAC is the board's presidential decision that rejected the petitioner's position that pre-notice is required as to specific aspects of corroboration. The statute and the instructions make clear that it's the applicant's burden to provide corroborating evidence prior to the hearing, not after the hearing. But if you have an issue of credibility, which obviously you don't know whether the credibility is going to go one way or the other until after you hear the decision, how can you do it beforehand? Again, the statute makes clear, the Real ID Act makes clear that corroboration is required. The I-589 application instructions state that corroboration must be presented and if it's not, an explanation must be given as to why it's not available. So this is not a surprise to anybody that you're going to need corroboration to support your claim. In this instance, numerous continuances were allowed to provide the petitioner additional time to get additional corroborating evidence. Everybody knew that corroboration would be required. It was not a surprise. And as the matter of LAC specifically stated, it is the applicant's duty to obtain evidence to meet his burden of proof prior to rather than after the hearing. Now, as to the motion to reopen, the reason the board did not abuse its broad discretion in denying the motion to reopen was that all of the evidence presented to the board in the motion to reopen was available at the time of the immigration hearing. None of it was unavailable. The brother specifically stated, I decided not to come forward. I'm only coming forward now because she lost. The friend gave no explanation for why she had not previously provided this information. Was she given that opportunity or expressly invited to meet that prong? Which prong, Your Honor? To explain why she was unable to come forward with the corroborating evidence. She was cross-examined about it at length by the DHS attorney. Do you have your brothers here? She had claimed that she told her brothers that her brothers noticed that she was pregnant and that she cried whenever they asked them what happened. All four of her brothers were in New Bedford. She was asked through cross-examination, are they here to testify? No. Her explanation as to why her brother, she was given an opportunity. She said that one of her brothers, he wasn't involved in this. That was not a sufficient explanation. He was there and she claimed that he had relevant information. She didn't provide it. DHS counsel also cross-examined her at length about, did she have medical records or photographs related to the alleged domestic abuse? Did she have medical records or photographs regarding the alleged rape? All of this was examined in detail over the course of a cross-examination that occurred not at one hearing, but at two hearings separated by five months. Well, I would just like to go down these issues. Dr. Masico did not testify because the IJ ruled that she could not testify concerning topics not included in her original affidavit. Is that correct? That's incorrect, Your Honor. It is? If I could take you through the procedural posture here. Can you be brief, just tell me why this is wrong? Okay. The IJ admitted into evidence Dr. Masico's April 9th affidavit, and then on September 21st, the business date before the September 24th hearing, admitted a late-filed supplemental full report by Dr. Masico explaining the entire basis for her evaluation. It was only then, after the judge had twice had to lecture counsel about not submitting things at the last minute, it was only after the judge had said, I'm going to accept this late-filed Masico supplemental affidavit because I don't want to prejudice your client. It was only after that when counsel suggested that they not only wanted Dr. Masico to testify on the basis of her evaluation of the petitioner, but that they also wanted her to provide a general opinion, unrelated to the specifics that petitioner had talked about in the evaluation, a general opinion about the effects of traumatic events. At that point, the court said, that's enough. I'm going to ask that Dr. Masico rely on the evidence that she's previously provided, and the counsel agreed not to have Masico testify. The court was willing to have Masico testify. Counsel agreed, because Masico had a timing problem, counsel agreed that her two affidavits, her affidavit and her supplemental report, would come in as uncontroverted. What about Dr. Pye? He was also excluded because he wanted to testify about what was not in his original affidavit. That's not entirely correct, Your Honor. We'll tell you what part it is. Okay. Dr. Pye, on September the 2nd hearing, wanted to testify not only to what she had described in her affidavit, but also to events that she claimed had happened since the affidavit. There had been no submission of what that testimony was going to be, and so the court asked Dr. Pye to try to the extent possible to limit her testimony to the evidence that had been proffered already, but did not actually limit it to what was in her affidavit. In fact, the court permitted Dr. Pye to testify at length. If I may just answer the question, permitted her to answer at length what the current state of events in Honduras was. Dr. Pye gave her opinion, this is at pages 33, 49 to 50 of the record, gave her opinion on the current situation based in part on a research trip she did, quote, this year. She testified that in August 2012, MUCA members had been tortured for protesting. That's 355. She said a MUCA member had been killed in the past month. That's 356. She said attacks on MUCA members had not stopped since Zelaya returned. That's 368. So in fact, the court accepted as uncontroverted Dr. Pye's lengthy affidavit discussing the full background in Honduras, and simply asked her to try to the extent possible to limit her testimony so as not to prejudice the government on things that she hadn't proffered, but in fact allowed her to testify. She didn't testify about violence in the specific area where she came from. And she did at length. She testified to the country conditions in that specific area. No, I'm not talking about the country conditions. I'm talking about the specific area. Yes, in that specific area, the Baja region. She testified at length, not only in a lengthy 20-page declaration that spanned the period from the 70s all the way through 2012, but also testified, as I've just gone through, to recent events, events as recent as a month before September. She testified to events in August 2012. She was not prevented from testifying fully. What about the objections to the medical records that would have established the date of the rave? There were no medical records that would have established the date of the rave. That was one of the problems. Viviana Abreu. Okay, she's not a doctor. And if you look at what she states in her statement there. There were no medical records that established the timing of the pregnancy to moderate the rave? No, no medical records. First of all, two different times. One is at the IJ hearing. No medical records whatsoever provided at the IJ hearing, which the IJ was perfectly justified in drawing a negative inference from. If you're talking now about the motion to reopen. Yes, that's what I'm talking about. Okay, the motion to reopen. If you look at Viviana Abreu's statement, she says that it was the petitioner herself who calculated the date of her conception as 32 weeks. Abreu was not a doctor. Abreu was a case manager. And she said that it was petitioner who said that she was 32 weeks pregnant. And there were no medical records? No, there were no. Did they not try to present the medical records? They did not. Never. Not even in the motion to reopen, Your Honor. No medical records provided. We are wrong. They provided a caseworker summary. Thank you. For all those reasons, if there are no further questions, we would ask that you deny the petition for review. Your Honor, with regard to medical records, there is in fact that there was presented a page from her. There is a detailed affidavit, obviously, that was submitted to the board from the caseworker at the health center that she went to for her medical treatment. The caseworker details her efforts to find out what was going on with the petitioner because of her reaction to her pregnancy. And one of the things that she indicated was that the petitioner was considering giving the child up for adoption. It took her several visits and discussions before the petitioner revealed to her that the child was in fact the result of a rape. That was offered to the board, as was a page from her actual medical record that indicates where she is in her pregnancy as of that date. This was in the motion? That was with the motion to reopen. I believe the fundamental argument we're hearing from the government is that at an immigration proceeding, after you've had the preliminary proceeding, but when you get to the hearing, it's like any other trial, a criminal trial, a civil trial or whatever. You've got to give it your best shot at the trial, whatever corroboration you want to offer or anything, before you hear the jury or the judge's final verdict. And at that point, it's too late to then bring something in. Well, Your Honor, in this case, she did give it a very serious shot. She presented substantial corroborating evidence. And then the judge asked for specific things. I think the whole issue here is what you're saying is when the judge comes down and says it wasn't enough for reasons A, B, and C, you should get another shot to then hold in on A, B, and C. I think that's your argument. When the judge, as here, says that all of the court's doubts could have been resolved by the production of specific evidence, the statute does require, the plain language of the statute requires that. And even the Board of Immigration Appeals, a matter of LAC, which is the case that the Board here relied upon, it's the precedent decision from the Board on this issue, even that case indicates that, at the very least, the judge should have given her an opportunity to put on the record why the evidence the judge was seeking was not reasonably available, and the judge should have made a finding on that. So she doesn't even give a damn. Your brother, counsel, has suggested that cross-examination is a reasonable substitute for that. I'm putting words in his mouth, but that was his answer when I asked that question. Your Honor, that is not a reasonable substitute. The statute is very clear that when the judge determines that evidence is required, the judge has the power to determine that they want specific evidence. But if they require that, the applicant then has the obligation to be producive or to explain why it is not reasonably available. They cannot do that unless they're informed what that evidence is. The opportunity to explain why the corroborating evidence is not reasonably available is not an issue that was argued to the BIA. Am I correct about that? This provision was argued to the BIA, Your Honor. Yes, which includes that. Thank you both. Thank you.